UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE FEAVER, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>        Defendants. | Case No.  15-cv-00890-EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**<br><br>Docket No. 33 |

## I.     INTRODUCTION

Plaintiffs Rose Feaver, Myungshun Shim, and Artin Adamian filed the instant complaint against Defendants Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals (collectively, Kaiser).  Docket No. 18 (First Amended Complaint) (FAC).  Plaintiffs are Outpatient Pharmacy Managers (OPMs) who allege that they worked uncompensated overtime. *Id.* at ¶ 4.  Plaintiffs seek to bring a collective action for violations of the Fair Labor Standards Act (FLSA), and a class action for violations of California's Unfair Competition Law (UCL) and various California Labor Code provisions, including failure to pay overtime compensation and waiting time penalties.  *Id.* at ¶¶ 26, 29.

The instant case is a follow-up to a class action lawsuit brought in state court.  During the state court proceedings to certify the case as a class action, Plaintiffs' counsel presented charts of e-mails that were sent by OPMs during non-work hours.  Despite this evidence, the state court denied class certification.  Plaintiffs now argue that these same e-mail charts put Kaiser on notice of uncompensated overtime, and on this basis move for conditional certification of their FLSA claim.  Docket No. 33-1 (Mot.) at 4.

Plaintiffs' motion for conditional certification came on for hearing before the Court on

**United States District Court**
For the Northern District of California

1  January 5, 2016.  Plaintiffs seek to conditionally certify a class of "All persons who were

2  employed by Defendants as non-exempt OPMs in the State of California at any time on or after

3  October 4, 2013."  FAC at ¶ 26.  For the reasons stated below, the Court **GRANTS** Plaintiffs'

4  motion for conditional certification.

5  ## II.    BACKGROUND

6  Plaintiffs are OPMs, who act as managers of Kaiser's pharmacy locations.  Docket No. 34

7  (Opp.) at 2; *see also* Docket No. 34-1 (Lieberman Dec.), Exh. B.  An OPM's duties include

8  managing staff, scheduling, reviewing payroll, filling prescriptions, and managing inventory.  *Id.*

9  OPMs were originally classified as exempt employees, but following a series of lawsuits that

10  ended in a settlement, Kaiser reclassified the OPMs as hourly employees in November 2009.  *See*

11  Docket No. 33-2 (Littlefield Dec.), Exh. 4 at 1:7-8.

12  In 2012, *Jong v. Kaiser Foundation Health Plan, et al.*, Case No. RG12613328, was filed

13  in state court.  FAC at ¶ 1.  Like the instant case, *Jong* was a putative class action brought on

14  behalf of OPMs, who alleged that they worked uncompensated overtime.  *Id.*  The *Jong* plaintiffs

15  alleged that following reclassification, Kaiser actively discouraged OPMs from submitting

16  overtime requests, despite the demands of a job that required them to work more than 40-hour

17  weeks.  *See* Littlefield Dec., Exh. 5 at 1:9-16.  Based on these job responsibilities and budget and

18  staffing limitations, the *Jong* plaintiffs filed a motion for class certification.  Mot. at 7; *see also*

19  Littlefield Dec., Exh. 5.  Kaiser opposed the motion, submitting the declarations of seventeen

20  OPMs who declared that they had never worked off the clock.  Mot. at 7.

21  The *Jong* plaintiffs then requested the e-mails of the seventeen OPMs.  Kaiser produced

22  data on e-mails sent by the seventeen declarants, limited to the 90 days preceding the plaintiffs'

23  request.  *Id.* at 8.  Following receipt of the e-mails, the *Jong* plaintiffs filed their reply brief,

24  including a chart (the 10/4/13 chart) listing 500 e-mails sent by the seventeen declarants during

25  off-work hours, *i.e.*, before clocking in, after clocking in, and during lunch.  Littlefield Dec., Exh.

26  11.  The *Jong* plaintiffs argued that these e-mails, which included e-mails to their supervisors,

27  warranted class certification.  The state court continued the motion to certify to permit the *Jong*

28  plaintiffs to obtain and analyze the sent e-mail data for all OPMs.  Mot. at 9.  The *Jong* plaintiffs

United States District Court
For the Northern District of California

1  subsequently filed a new chart (the 1/15/14 chart) listing 13,000 e-mails sent by the 150 OPMs

2  during the approximately four-month period ending on October 18, 2013.  *See* Docket No. 36

3  (Reply) at 4; Littlefield Dec., Exh. 18.  Kaiser's counsel reviewed the 1/15/14 chart, color coding

4  the e-mails based on whether the subject line was clearly personal (green) or ambiguous as to

5  whether it was personal or work-related (yellow).  Littlefield Dec., Exh. 18.  The vast majority of

6  e-mails were not color coded and thus were presumably work-related.  *See id.*

7          During the hearing on the motion for class certification, the *Jong* plaintiffs argued that

8  Kaiser would have actual notice of the OPMs' off the clock work at least as of October 4, 2013,

9  based on their receipt of the 10/4/13 chart.  Mot. at 10.  The *Jong* plaintiffs also suggested that the

10  class period could be amended to start running from October 4, 2013.  *Id.*  On June 26, 2014, the

11  state court denied the motion for class certification.  *See* Docket No. 24 (Ord. Denying Class Cert.)

12  at 1.  With respect to the e-mail evidence, the state court explained that the e-mail data did not

13  support class certification because:

> the wide variation in OMP clock-in and clock-out times that makes
> it difficult to identify which emails were sent when OMPs were off
> the clock, the fact that few of these were received by the relevant
> OMP manager and those that were do not support an inference of off
> the clock work without knowledge of when the sender clocked-in or
> out on the day of the email, and the email itself cannot evidence off
> the clock work unless it is opened and examined.

18  *Id.* at 20.  In short, the court held "[e]vidence of *some* off the clock work done by *some* OPMs

19  does not transmute essentially individual claims into claims that are amenable to class treatment."

20  *Id.* at 21.  Further, with respect to the *Jong* plaintiffs' suggestion that the e-mail charts constitute

21  "actual notice" to Kaiser, the state court found:

> Plaintiffs' two rounds of filings put Kaiser on notice that Plaintiffs
> *claim* the email traffic reflects off the clock work, but again, one
> would have to delve into each alleged off the clock email and
> compare it to time records to determine when a given OMP clocked
> in and out that day.  Further, if that exercise revealed some set of
> emails sent apparently off the clock, one would still have to open the
> email and evaluate whether it reflected work or not and whether it
> was more than de minimum - e.g., hypothetically, "Yes, I can make
> next week's meeting."
>
> As for Kaiser's subsequent filing amount to an admission due to the
> color coding provided by Kaiser's counsel, there is no such
> admission.  Kaiser's analysis is of an email long and does not reflect

3

1    any analysis of email content, and Kaiser's argument throughout has
2    emphasized the difficulties of drawing any inferences of non-de
     minimum off the clock work without opening the emails.

3    *Id.* at 22-23.

4    Plaintiffs then filed the instant suit on February 26, 2015.  Docket No. 1.  Plaintiffs allege

5    that, despite having been "put on notice of the widespread OPM off the clock work" based on the

6    *Jong* class action, Kaiser "took no action to curb the off the clock work being performed

7    throughout California until the conclusion of the Jong Action, at which time Defendants changed

8    their practices and policies in some but not all of their California outpatient pharmacies and (1)

9    ceased their policy of discouraging certain OPMs from reporting their overtime and (2) began

10   compensating some of the OPMs for this spike in reported overtime."  FAC at ¶ 2.  For instance,

11   Plaintiff Feaver alleges that she has consistently worked off the clock every week until November

12   2014.  *Id.* at ¶ 11.  Plaintiff Shim in turn alleges that she has consistently worked off the clock

13   every week until March 2014.  *Id.* at ¶ 16.  Finally, Plaintiff Adamian asserts that he consistently

14   worked off the clock every week until December 2014, when his employment ended.  *Id.* at ¶ 21.

15   In support of their claim, Plaintiffs have submitted charts for Plaintiff Feaver and Shim,

16   showing their off the clock e-mails.  Plaintiff Feaver's chart identifies 370 e-mails that were sent

17   off the clock, between October 8, 2013 and March 6, 2015.  Littlefield Dec., Exh. 25.  Plaintiff

18   Shim's chart identifies 91 e-mails that were sent off the clock, between October 11, 2013 and June

19   23, 2014.  Littlefield Dec., Exh. 26.  Plaintiff Adamian has no e-mails, as his e-mails were

20   destroyed by Kaiser.  Mot. at 4 fn. 4, 18.  Plaintiffs do not argue that they were ever directed not to

21   record their overtime or to falsify a time card, with the exception of one instance in which Plaintiff

22   Feaver was directed not to record her time.  Lieberman Dec., Exh. A (Shim Dep.) at 28:8-29:1;

23   Exh. C (Feaver Dep.) at 51:9-15, 87:19-89:23; Exh. D (Adamian Dep.) at 36:8-10.

24   Kaiser responds that it has a timekeeping policy that requires non-exempt employees to

25   accurately record all of their work time.  Opp. at 3; Lieberman Dec., Exh. E.  Employees who fail

26   to comply with the timekeeping policy are subject to disciplinary action up to and including

27   termination of employment.  Lieberman Dec., Exh. E at § 5.4.1.  Kaiser also asserts that it

28   provided its OPMs with additional training regarding these policies in June 2014, and that it

4

1  ceased providing its OPMs with certain tools used to remotely access Kaiser's computer systems.

2  Lieberman Dec., Exh. F at 2.  Kaiser also points to Plaintiff Shim's and Plaintiff Feaver's

3  statements that their Directors would have no way of knowing whether or not they were clocked in

4  at the time they sent an e-mail without analyzing time records, given their varying schedules.

5  Shim Dep. at 31:20-32:25; Feaver Dep. at 313:14-20.

**III.   DISCUSSION**

7  A.    Legal Standard for Class Certification

8        Plaintiffs seek conditional certification of their overtime case as a collective action under

9  the FLSA, 29 U.S.C. § 216(b).  Specifically, section 216(b) provides:

> Any employer who violates the provisions of section 206 or section
> 207 of this title shall be liable to the employee or employees
> affected in the amount of their unpaid minimum wages, or their
> unpaid overtime compensation . . . .  An action to recover the
> liability prescribed in either of the preceding sentences may be
> maintained against any employer (including a public agency) in any
> Federal or State court of competent jurisdiction by any one or more
> employees for and in behalf of himself or themselves and other
> employees similarly situated.  No employee shall be a party plaintiff
> to any such action unless he gives his consent in writing to become
> such a party and such consent is filed in the court in which such
> action is brought.

17  29 U.S.C. § 216(b).

18        To maintain a collective action under this provision, "a plaintiff must demonstrate that the

19  putative collective action members are similarly situated."  *Richie v. Blue Shield of Cal.*, No. C-

20  13-2693, 2014 WL 6982943, at *6 (N.D. Cal. Dec. 9, 2014).  Neither the statute nor the Ninth

21  Circuit has defined when employees are "similarly situated."  Instead, the district courts have

22  adopted a two-step approach for determining whether putative FLSA class members are "similarly

23  situated."  *Id.*; *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001);

24  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001).

25        Under the first step, the court determines whether the proposed class should be

26  conditionally certified for the sole purpose of sending out notice of the proposed action to the

27  potential class members.  *Id.*; *see also Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523

28  (2013) ("The sole consequence of conditional certification is the sending of court-approved

United States District Court
For the Northern District of California

written notice to employee . . . .").  This first step is a "lenient one that typically results in certification," "requir[ing] little more than substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy or plan." *Benedict v. Hewlett-Packard Co.*, No. 13-cv-0119-LHK, 2014 WL 487135, at *5 (N.D. Cal. Feb. 13, 2014).  The plaintiff must show that some "identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claim together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Russell v. Wells Fargo Co.*, No. 07-cv-3993-CW, 2008 WL 4104212, at *5 (N.D. Cal. Sept. 3, 2008).  Plaintiffs do not need to conclusively establish that a collective action is proper because a defendant will be free to revisit the issue at the close of discovery.  *Benedict*, 2014 WL 487135, at *5.  Further, the Court should not consider the substantive merits of plaintiffs' FLSA claim. *Richie*, 2014 WL 6982943, at *6; *Centurioni v. City & Cnty. of San Francisco*, No. 07-cv-1016-JSW, 2008 WL 295096, at *2 (N.D. Cal. Feb. 1, 2008).  However, the elements of an FLSA off the clock claim may inform whether the plaintiff and other potential claimants are similarly situated for purposes of the claim.  *See Richie*, 2014 WL 6982943, at *8.

By contrast, the second-step of the two-step inquiry, in which the party opposing certification may move to decertify the class once discovery is complete, requires that the court make factual determinations regarding the "propriety and scope" of the class.  *Id.* At *7.  The court considers three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations.  *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004).  The court applies a stricter standard at this step "because there is much more information available, 'which makes a factual determination possible.'"  *Harris v. Vector Mktng Corp.*, 716 F. Supp. 2d 835, 837-38 (2010) (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1123 (E.D. Cal. 2009)).

Here, the parties do not dispute that the first-step applies to Plaintiffs' motion for conditional certification.  Thus, the Court applies the more lenient standard.

B.      Application

In general, in order to prevail on a compensation claim under the FLSA, a plaintiff must demonstrate that: (1) he or she worked overtime without compensation, and (2) the employer knew or should have known of the overtime work.  *See Allen v. Board of Pub. Educ. For Bibb Cnty.*, 495 F.3d 1306, 1314-15 (11th Cir. 2007); *see also Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).  At the first-step inquiry, "the ultimate inquiry . . . is to determine whether individuals 'similarly situated' to Plaintiff actually exist and were 'victims of a common policy or plan that violates the law.'"  *Richie*, 2014 WL 6982943, at *9 (quoting *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 443 (S.D.N.Y. 2012).  Thus, in *Chastain v. Cam*, No. 13-cv-1802-SI, 2014 U.S. Dist. LEXIS 102465, at *13 (D. Or. July 28, 2014), the court granted in part conditional certification where the plaintiffs sufficiently alleged a "common policy or practice" regarding the defendants' failure to pay employees on established paydays.  This common policy or practice does not need to be a formal, written policy.  *See Espinoza v. Cnty. of Fresno*, 290 F.R.D. 494, 501 (E.D. Cal. 2013).

Here, the 10/4/13 and 1/15/14 e-mail charts demonstrate that there is a prevalent practice of OPMs engaging in off-the-clock work.  In particular, the 1/15/14 chart listed off-the-clock e-mails sent by 148 out of the 150 OPMs working at the time.  *See* Littlefield Dec., Exh. 15 at 2, Exh. 18.  The chart included the time period immediately before the proposed class period, as well as approximately the first two weeks of the proposed class period.  This practice has continued to at least March 2015, as shown by the charts of allegedly off-the-clock e-mails sent by Plaintiffs Feaver and Shim.  *See* Littlefield Dec., Exhs. 25, 26.  Notwithstanding an alleged formal policy to the contrary, there is substantial evidence of a common practice of off-the-clock work.  This common practice of sending off-the-clock e-mails binds the proposed collective class together, a practice that Kaiser was aware of starting on October 4, 2013, when Kaiser first received the 10/4/13 chart.  This evidence is sufficient to satisfy the lenient standard for first-step conditional certification.

At the hearing, Kaiser relied extensively on the Court's decision in *Richie*; however, *Richie* is distinguishable because there, the plaintiff relied solely on anecdotal evidence to show that there

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  was a common policy or practice.  *See* 2014 WL 6982943, at *9 ("Plaintiff has failed to

2  produce . . . a single declaration or non-hearsay deposition testimony of any other putative class

3  member in which they state, like Plaintiff, that they worked off the clock as a result of the

4  production targets").  Specifically, this Court found that "the only evidence in the record that other

5  putative class members worked off the clock as a result of the pressure imposed by these

6  productivity goals is her only statement that she 'frequently heard' other (unnamed)

7  telecommuters discuss 'not being able to meet their production target within their 8 hour shift' and

8  that they 'often worked through lunch or breaks in order to meet their production targets.'"  *Id.*  By

9  contrast, Plaintiffs here rely on more than hearsay testimony, as they have produced concrete

10  evidence that for the first two weeks of the proposed class period, as well as the period

11  immediately preceding the proposed class period, there was a practice of sending e-mails during

12  off-work hours that was common to the vast majority of the class (148 out of 150 OPMs).  Thus,

13  the Court's decision in *Richie* is distinguishable from the instant case.

14       Kaiser also argued that the *Jong* court had previously rejected Plaintiffs' contention that

15  the e-mail charts showed a common policy or practice that it should have been aware of.  As the

16  Court explained during the hearing, the *Jong* court applied a different standard than the lenient

17  standard applied for conditional certification under the FLSA.  Furthermore, to the extent that the

18  *Jong* court found that the e-mail charts did not evidence uncompensated overtime, the Court

19  disagrees.  For example, looking at the 10/4/13 chart, on June 12, 2013, three e-mails were sent by

20  Ms. Barbara Choi at 9:53 A.M., 9:54 A.M., and 9:55 A.M., even though she did not begin work

21  until 10:00 A.M.  Similarly, on June 22, 2013, Ms. Choi sent e-mails to other Kaiser recipients at

22  5:03 P.M., 5:11 P.M., 5:14 P.M., and 5:20 P.M., even though she logged out at 5:00 P.M.  These

23  e-mails could lead to a reasonable inference that Ms. Choi was working unrecorded time, thus

24  putting Kaiser on notice of the ongoing practice.

25       Finally, Kaiser makes several arguments that either go to the merits of the case or are more

26  appropriate for the second step analysis.  For example, Kaiser points to its compliance efforts,

27  which not only included written policies requiring accurate recordation of time, but additional

28  training to the OPMs regarding these policies and affirmative actions to prevent off the clock work

**United States District Court**
For the Northern District of California

1   such as by no longer providing OPMs with resources to access Kaiser's computer systems from

2   outside of the office.  *See* Lieberman Dec., Exh. F; Feaver Dep. at 78:3-21; Adamian Dep. at

3   60:14-61:24.  Kaiser also argues that there are significant individualized inquiries as to whether

4   the e-mails represent compensable work-time, such as whether they represent *de minimus* time or

5   uncompensated gap time.  In addition, the Court expressed some skepticism as to whether receipt

6   of the 10/4/13 and 1/15/14 e-mail charts created an affirmative duty upon Kaiser to compare on a

7   regular basis e-mail records with recorded time.  *Cf. Newton v. City of Henderson*, 47 F.3d 746,

8   749 (5th Cir. 1995) (holding that "as a matter of law such 'access' to information does not

9   constitute constructive knowledge that [the plaintiff] was working overtime"); *Hertz v. Woodbury*

10  *Cnty.*, 566 F.3d 775, 781-82 (8th Cir. 2009) (finding that "[a]ccess to records indicating that

11  employees were working overtime . . . is not necessarily sufficient to establish constructive

12  knowledge").  But while the Court agrees that these are significant questions, such issues are more

13  appropriately addressed at step two, rather than the more lenient step one.  *E.g.*, *Edwards v. City of*

14  *Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006) (finding that while the "[d]efendant

15  presents detailed analysis of the differences in the two officers' positions and duties, as well as a

16  detailed discussion of the differences in their potential claims . . . the Court finds that [the

17  d]efendant's arguments are better suited for the more stringent second step of the § 216(b)

18  collective action certification analysis -- i.e., Defendant's arguments are better suited for motion to

19  decertify the § 216(b) collective action filed once notice has been given and the deadline to opt-in

20  has passed"); *Richie*, 2014 WL 6982943, at *6 ("the Court is not to consider the substantive merits

21  of plaintiff's FLSA claim" at the first step of the two-step inquiry).

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

9

### IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for conditional certification.  The parties are ordered to meet and confer regarding the form and substance of the class notices in this action, consistent with this Order.  The parties shall file a stipulated class notice with the Court by **February 16, 2016**.

This order disposes of Docket No. 33.


**IT IS SO ORDERED**.


Dated: January 27, 2016

_____
EDWARD M. CHEN
United States District Judge